UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| In re:<br><br>Marc Gerard Lemay,<br><br>                Debtor | Chapter 13<br>Case No. 24-10106 |
|---|---|

## MEMORANDUM OF DECISION

In this chapter 13 case, the debtor hopes to cure the arrears on a claim secured by a mortgage on his residence and to maintain current monthly installment payments on that claim. In keeping with this aspiration, the debtor has proposed a plan [Dkt. No. 26] (the "Plan") and has challenged the claim [Dkt. No. 63] (the "Claim Objection"). For the reasons set forth in this decision, the Plan cannot be confirmed and the Claim Objection fails as a matter of law.

## Legal Framework

A creditor asserting a right to payment from a chapter 13 estate does so by filing a proof of claim. See 11 U.S.C. § 501. A claim, proof of which is filed under § 501, "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). "But even where a party in interest objects, the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b)." Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 449 (2007) (quoting 11 U.S.C. § 502(b)). "Allowance constitutes [a] determination of the amount of [the] claim" as of the petition date. Am. Express Bank, FSB v. Askenaizer (In re Plourde), 418 B.R. 495, 502 n.10 (B.A.P. 1st Cir. 2009) (internal quotation marks omitted). Disallowance, on the other hand, amounts to a determination that no liability is owed to the creditor by the estate. See Pawtucket Credit Union v. Boyajian (In re Diruzzo), 527 B.R. 800, 804 (B.A.P. 1st Cir. 2015). A claim is subject to disallowance if it is

"unenforceable against the debtor . . . under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]"  11 U.S.C. § 502(b)(1).

Rule 3001 establishes a rebuttable presumption designed to streamline the process by which a creditor can receive payment in a bankruptcy case.  Under that rule, a proof of claim "is prima facie evidence of the claim's validity and amount" if "signed and filed in accordance with [the Bankruptcy Rules]."  Fed. R. Bankr. P. 3001(f).  "The interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by substantial evidence."  Juniper Dev. Grp. v. Kahn (In re Hemingway Transp., Inc.), 993 F.2d 915, 925 (1st Cir. 1993).  In this context, "substantial evidence" consists of evidence that, "if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."  In re Yourelo Your Full-Service Relocation Corp., 665 B.R. 183, 190 (Bankr. D. Mass. 2024) (internal quotation marks omitted).

Rule 3001 also regulates the form, content, and supporting documentation for proofs of claim.  In re Russell, Case No. 22-10083, 2023 WL 320983, at *2 (Bankr. D. Me. Jan 19, 2023).  The following requirements, set forth in Rule 3001(c)(2), are pertinent here.  "If the debtor is an individual, the creditor must file with [its] proof of claim an itemized statement of the principal amount and any interest, fees, expenses, or other charges incurred before the petition was filed[.]"  Fed. R. Bankr. P. 3001(c)(2)(A).  The statement must be sufficiently specific "to make clear the basis for the claimed amount."  Fed. R. Bankr. P. 3001 advisory committee's note to 2011 amendment.  Official Form 410A "implements the requirements of Rule 3001(c)(2)(A)" with respect to a proof of claim asserting a lien against the debtor's principal residence.  Official Form 410A Instructions for Mortgage Proof of Claim Attachment 1 (10/20).  Part 5 of Form 410A—titled Loan Payment History from First Date of Default—calls for account activity

including: (A) date; (B) contractual payment amount; (C) funds received; (D) amount incurred; (E) description; and (F) contractual due date.  Official Form 410A.  The documentary requirements imposed by Rule 3001 and the Official Form serve two purposes.  In re Plourde, 418 B.R. at 504, n.12.  First, the required information is "intended to enable the debtor . . . to evaluate the claim's amount and validity and to challenge portions of the claim that may be inaccurate."  Id.  Second, the rules and the form "are intended to simplify the claims allowance process and provide a fair and inexpensive process for all parties including creditors."  Id.

If a proof of claim is unaccompanied by the itemization required by Rule 3001(c)(2)(A), other sections of Rule 3001 spell out the potential consequences.  First, the court may preclude the creditor from presenting the omitted information (unless the omission was "substantially justified" or harmless) or may award other appropriate relief.  Fed. R. Bankr. P. 3001(c)(3).  Second, the deficient proof of claim is not entitled the presumptive validity it might otherwise enjoy under Rule 3001(f).  See In re EP Energy E&P Co., 646 B.R. 795, 801 (Bankr. S.D. Tex. 2022) ("[F]ailure to comply with Rule 3001 . . . strips [a claim] of any *prima facie* validity, requiring the creditor to offer the supporting documentation to carry its burden of proof in the face of an objection.").  The consequences of failing to comply with Rule 3001(c)(2)(A) do not include disallowance of a claim.  See In re Russell, 2023 WL 320983, at *2 (citing Fed. R. Bankr. P. 3001 advisory committee's note to 2011 amendment).

**Factual & Procedural Background**

The following facts are derived from documents filed by the debtor in this case and his prior chapter 13 cases, testimony provided at an evidentiary hearing on a motion to extend the automatic stay in this case, and proofs of claim filed in this case.  The claim at the center of this case, now held by TD Bank, N.A., arose out of a home equity line of credit agreement that the

3

debtor executed nearly 30 years ago. See Claim No. 4-2 p. 28 (the "Agreement"). The debtor's obligations under the Agreement were secured by a mortgage on real estate in Litchfield, Maine. The Agreement provided, in pertinent part, "I agree to pay all of your reasonable attorney's fees, legal expenses, and other reasonable costs incurred in foreclosing or otherwise realizing on the real estate securing my obligations under this Agreement after a default." The debtor defaulted on his payment obligations and the first fee was assessed against the account as early as 2008, with more substantial and frequent assessments beginning in 2013. No payments were made under the Agreement between April 2013 and October 2022, a period of more than nine years. During that period, the debtor did not reside at the real estate in Litchfield; he lived in Florida, and his adult son lived at the residence in Litchfield.

At some point, TD Bank initiated a suit in state court seeking to foreclose the mortgage. To ward off the foreclosure, the debtor commenced three successive chapter 13 cases. In the first case, which was filed in the Middle District of Florida in 2022, the debtor filed a plan proposing to pay arrears to TD Bank totaling $35,000. The first case was dismissed in November 2022, prior to confirmation, for failure to make plan payments. Then, in February 2023, the debtor commenced a second chapter 13 case, this time in the District of Maine. In the second case, the debtor proposed, and the Court confirmed, a plan obligating him to pay the pre-petition arrears owed to TD Bank in the amount of $36,266. The second case was dismissed a year after it began, due to the debtor's failure to make plan payments. Then, in May 2024, the debtor commenced this case, the third in the series. In this case, the automatic stay was extended under 11 U.S.C. § 362(c)(3)(B) (when it would otherwise have expired) subject to conditions, including the requirement that the debtor file a plan "in which monthly payments to the chapter

4

13 trustee . . . include the amount of the maintenance payments on the secured debt owed to TD Bank, with such maintenance payments to be disbursed by the trustee[.]"

On June 24, 2024, TD Bank filed a proof claim in this case in the amount of $149,912 secured by a "Mortgage/Home Equity Line of Credit." See Claim No. 4-1 (the "Original Proof of Claim"). In the Original Proof of Claim—which was filed before the applicable bar date—TD Bank asserted that the pre-petition arrears totaled $44,900 and that the interest rate, although variable, was 9% on the petition date. Because TD Bank asserted a claim secured by a security interest in the debtor's principal residence, it was required to complete Official Form 410A and attach that form to its proof of claim. TD Bank did so—twice: there were two Form 410A attachments to the Original Proof of Claim. The first specified a monthly installment payment of $452. The second specified a monthly installment payment of $892. Both attachments indicated that the total debt included fees and costs totaling $43,457.

As it turns out, the first Form 410A attachment to the Original Claim was filed as a result of a clerical error.[1] But, before that came to light, the debtor filed the Plan on the local form adopted for use in this district under Rule 3015.1. In section 3.1, the Plan provides for current installment payments to TD Bank in the amount of $453 per month to be disbursed by the trustee along with payments on the arrearage component of the claim in the amount of $44,900. The text preceding section 3.1 of the Plan provides that, unless the Court orders otherwise, the

---

[1] Specifically, first 410A attachment (reflecting the lower monthly payment amount) was a copy of the form that had been filed with TD Bank's proof of claim in the debtor's second chapter 13 case. That form was inadvertently attached to the Original Proof of Claim.

5

amounts stated on a timely-filed proof of claim control over contrary amounts listed in the plan as to the current installment payment.[2]

Initially, confirmation was opposed by both the chapter 13 trustee and TD Bank. Later, TD Bank withdrew its objection. And, at a hearing in November 2024, the trustee reported that he had no enduring objections to confirmation. Nevertheless, the Plan was not confirmed because the debtor represented that TD Bank did not consent to the proposed confirmation order. He observed that the Original Proof of Claim was inconsistent as to the amount of the current installment payment, and he signaled that he may have a "post-petition mortgage arrearage problem" if the payments were $892 per month rather than $452 per month.

After that hearing, the debtor filed an objection to the Original Proof of Claim, challenging the fees, the interest rate, and TD Bank's position that the current monthly payment is $892. In January 2025, the Court held a preliminary hearing on that objection and a continued hearing on confirmation. TD Bank conceded that the first Form 410A attachment to its Original Proof of Claim had been filed as a result of a mistake. It further asserted that the 9% interest rate stated on the Original Proof of Claim was wrong, and that the applicable rate was 10%. It went on to explain in detail how the interest rate and the monthly payments of $892 were calculated based on the Agreement. The parties agreed that TD Bank should file an amended proof of claim to correct the errors that plagued the Original Proof of Claim.

TD Bank timely filed an amended proof of claim along with a written explanation of how it had calculated the interest rate and the monthly payment. See Claim No. 4-2 (the "Amended Proof of Claim"). The Amended Proof of Claim states the applicable interest rate is 10%. Like

---

[2] In section 8.1, the Plan provides that the debtor intends to sell the Litchfield residence to his son, while retaining a life estate, and that his son will "therefore pay the TD Mortgage off in full between month 36 and 60."

6

the Original Proof of Claim, the Amended Proof of Claim asserts pre-petition arrears totaling $44,900.  The single Form 410A attachment to the Amended Proof of Claim indicates that the monthly installment payment is $892.  The form, in Part 5, includes the following information about fees assessed against the account since April 22, 2017: the date of assessment and a uniform description (i.e., "Fee Assessment").  A separate attached loan history provides the same level of detail with respect to the fees, but dates back to the credit line funding in 1996 and the first fee assessment in 2008.

In February 2025, the debtor filed the Claim Objection, once again challenging the computation of the monthly payment and contesting the asserted fees.  He averred that the fees represented "41% of the total debt claimed," an "amount far in excess of any reasonable mortgage fee assessment."  Beyond that, the debtor insisted that the Amended Proof of Claim did not identify what the fees were for or whether they were allowed by the Agreement, and he implied that TD Bank should be precluded from presenting the "omitted" itemization as a sanction for failure to comply with Rule 3001(c)(2)(A).  In response, TD Bank argued that the debtor had not identified any basis to disallow the claim under § 502(b) and had failed to produce substantial evidence sufficient to overcome the prima facie validity of its claim under Rule 3001(f).  TD Bank averred that its fee itemization had been sufficient, but nevertheless attached to its response an exhibit categorically describing each of the assessed fees [Dkt. No. 67-2] (the "Supplemental Itemization").  The categories consisted of property taxes, costs of securing the property, costs for copies of title, legal costs, and valuation expenses.  The Supplemental Itemization revealed that TD Bank made protective advances totaling $27,899 for property taxes between 2013 and 2022—during the time that the debtor was living in Florida.

7

In light of the Amended Proof of Claim and the Claim Objection, the Court entered an order deeming the debtor's objection to the Original Proof of Claim moot. Then, on April 3, 2025, the Court held a preliminary hearing on the Claim Objection and a continued hearing on confirmation. During that hearing, the debtor confirmed that he was not challenging the 10% interest rate asserted in the Amended Proof of Claim. He also conceded that he had no enduring objection to the current monthly payment of $892 listed in the Amended Proof of Claim. For its part, TD Bank explained what the costs of securing the property consisted of, why some of those costs were assessed multiple times in one day, and why some of the individual fees for legal costs were relatively minimal. The debtor did not challenge any of these explanations or ask for additional information, and he did not ask the Court to strike or disregard the Supplemental Itemization. The Claim Objection did not involve any disputed facts. The debtor did not, for example, claim that he, and not TD Bank, had been paying the property taxes reflected in the Supplemental Itemization. As such, the Court took confirmation and the Claim Objection under advisement without scheduling an evidentiary hearing.

Nearly two weeks later, the debtor filed a supplement to the Claim Objection attempting to withdraw his concession concerning the amount of the monthly payment. The debtor also filed a proposed order on confirmation, and TD Bank objected to that proposed order. The Court then issued an order clarifying the status of the matters under advisement, ruling that these filings would not be considered to the extent that they raised any issues that were not incorporated into the record before the Court took the matters under advisement.

## The Scope of the Dispute

The debtor contested the amount of the current monthly payment set forth in the Amended Proof of Claim, and then conceded that amount was correct, then later attempted to

withdraw that concession.  The Court will not permit the debtor to retract that concession.  The dispute regarding TD Bank's claim has featured multiple volleys, which is fine as far as it goes.  But at a certain point, the parties must stake out a position and then live with it.  That point was crossed when the Court took the dispute under advisement.  It would do no good in this matter, to permit the parties to continue adding to the record and changing theories after their dispute was submitted for decision.  Moreover—setting aside the procedural irregularities—the Court is not persuaded by the thinking employed in the attempted supplement to the Claim Objection.

During the April 3 hearing, the debtor belatedly attempted to raise several issues that he had not previously flagged in his written Claim Objection, only one of which merits discussion.  In particular—even though he expressly disclaimed any enduring objection to the current monthly payment of $892 asserted in the Amended Proof of Claim—the debtor highlighted the discrepancy between the current monthly payment of $892 asserted in the Amended Proof of Claim and the current monthly payment of $452 asserted in his prior chapter 13 case.  And, he claimed, that discrepancy gave rise to questions about how TD Bank had calculated the pre-petition arrears of $44,900.  This challenge to the asserted arrears qualifies as too little, too late.  The debtor filed a plan, in each of his three cases, proposing to pay in full the pre-petition arrears asserted by TD Bank.  In his second case, his plan was confirmed.  In this case, he did not challenge the amount of the pre-petition arrears in his written Claim Objection.  Under the circumstances, considering the multiple opportunities that the debtor has had to crystallize his concerns about TD Bank's claim, it would be inequitable to expand the contours of the contested

9

matter beyond those raised in the Claim Objection.[3] As such, the only remaining aspect of the Claim Objection is the debtor's challenge to the fees included in the Amended Proof of Claim.

## Discussion

The debtor suggests that TD Bank's itemization of the fees was insufficient for him to determine the nature of the asserted fees. This suggestion—although indirectly—tests whether the Amended Proof of Claim was filed in compliance with Rule 3001(c)(2)(A), and whether it is entitled to a presumption of validity under Rule 3001(f). As noted, the Amended Proof of Claim was filed with Form 410A, and Part 5 of that form provided the following information about fees assessed against the account since April 22, 2017: the date of the assessment, the amount of the fee, and a uniform description—i.e., "Fee Assessment." A separate attachment provided the same type of information, dating back to the first fee assessed against the account in 2008. Ideally, TD Bank would also have supplied, in these attachments, a categorical description of the type of fees assessed against the account, rather than the uniform description "Fee Assessment." See In re Kennedy, 568 B.R. 367, 372 (Bankr. D. Kan. 2017) ("Obviously, to ensure compliance with the intent of Rule 3001, providing more information is always the better choice."). Although that ideal was not met here—at least not initially—the information included in the Amended Proof of Claim adequately served the purpose of Rule 3001(c)(2)(A). TD Bank supplied "an itemized statement" in the form required by Rule 3001(c)(2), on Form 410A, and this information enabled the debtor "to determine what portion of the claim to object to, and how to frame [his] objection." Id. at 372-73. In short, the Amended Proof of Claim did enough to

---

[3] Further, even if the debtor's belated challenge to the asserted pre-petition arrears had been properly presented, he has not presented any evidence in support of his position. The debtor has not, at any point, attempted to say what the monthly payment amount should have been, or what the pre-petition arrears should be. He cannot shift the burden to TD Bank by merely asking questions.

10

comply with Rule 3001(c)(2)(A), rendering the Amended Proof of Claim prima facie evidence of the claim's validity and amount.  See Fed. R. Bankr. P. 3001(f).

In his efforts to establish otherwise, the debtor cites Plourde for the proposition that the debtor "is entitled to know what charges were assessed and the contractual basis for each charge." 418 B.R. at 509.  That standard was not met in Plourde, a case involving objections to claims for credit card debt evidenced by proofs of claim that indicated that no interest or other charges were included in the claims and included no itemization of interest or other charges.  Id. at 499-500, 509.  In the face of those objections, the creditors "simply stonewalled[,] . . . refusing to provide or introduce evidence that established the nature of [the] charges" against the debtors' accounts.  Id. at 510.  On appeal from an order disallowing one of the claims and allowing the other in a reduced amount, the trustee conceded that the estate was liable on both claims but argued that the creditors had not "provided sufficient evidence to support payment as a general unsecured claim." Id. at 498.  The appellate court discussed claims allowance principles in passing but decided the appeal on distributional grounds based on 11 U.S.C. § 726, a statute not implicated here.  See id. at 503-10.  Plourde is thus distinguishable, both factually and procedurally, and the dicta highlighted by the debtor does not move the needle.

Even if the Amended Proof of Claim did not precisely comply with Rule 3001, the Claim Objection would still fail.  "Even a claim that lacks *prima facie* evidence of validity under Rule 3001(f) can present at least some evidence of a demand for payment from the bankruptcy estate." Sears v. Sears (In re Sears), 863 F.3d 973, 980 (8th Cir. 2017).  The Amended Proof of Claim was filed along with the Agreement that gave rise to the debt, the mortgage creating the lien on the debtor's residence, and attachments documenting activity on the account since the credit line was funded in 1996.  In addition, a creditor that has filed a deficient claim may be able to offer

additional evidence in support of its claim. See In re Bobe, 635 B.R. 435, 442-43 (Bankr. D.N.J. 2021). That happened here: TD Bank filed the Supplemental Itemization, providing additional details about the nature of the fees assessed against the account, and the debtor did not seriously dispute any of those details during the April 3 hearing on the Claim Objection.[4] On top of that—even if the Amended Proof of Claim was not presumptively valid—the debtor could only defeat the claim by asserting a substantive reason to disallow the claim under § 502(b) and offering some evidence to disallow the claim for the asserted reason. In re Sears, 863 F.3d at 980. Neither of those things has happened here.

The debtor generally complains that the total fees are unreasonable. This complaint could be construed as an argument that the fees (or some portion of the fees) included in TD Bank's claim are unenforceable against the debtor under the Agreement or applicable nonbankruptcy law, and therefore subject to disallowance under § 502(b)(1). But the Agreement itself permits reasonable fee assessments "incurred in foreclosing or otherwise realizing on the real estate securing [the claim] after a default." The debtor has not argued that this aspect of the Agreement was unenforceable and has not referenced any principles of applicable law that might inform an analysis of reasonableness. He has not offered any cogent reason to believe that the fees are unreasonable. See In re Northbelt, LLC, 630 B.R. 228, 266 (Bankr. S.D. Tex. 2020) (rejecting debtor's objection with respect to certain fees where the objection "consist[ed] solely of conclusory allegations"). The Supplemental Itemization reveals that nearly two-thirds of the assessed fees consisted of funds for property taxes advanced by TD Bank between 2013 and

---

[4] During the hearing on the Claim Objection, the debtor did not ask the Court to strike the Supplemental Itemization under Rule 3001(c)(3). Even if he had, the Court would treat the Supplemental Itemization as an informal amendment to the Amended Proof of Claim and exercise its discretion not to impose any sanctions under Rule 3001(c)(3). See Fed. R. Bankr. P. 3001 advisory committee's note to 2011 amendment (explaining that if a claim fails to comply with Rule 3001(c), the court "retains discretion to allow an amendment to a proof of claim under appropriate circumstances").

2022. Considering the length of the debtor's default in his payment obligations under the Agreement and the number of bankruptcy cases he has filed, it is unsurprising that the accumulated fees are in the quadruple digits and a relatively high percentage of the total debt. What is surprising is that the debtor has not, by this point, further refined his challenge to the claim, considering the length of time he has spent in bankruptcy cases ostensibly geared toward curing and maintaining the debt.

## Conclusion

The debtor has not produced a scintilla of evidence, let alone the substantial evidence necessary to defeat the Amended Proof of Claim, and he has not identified a substantive reason to believe that some portion of the claim should be disallowed under § 502(b). For this reason, the Amended Proof of Claim will be allowed in the amount asserted.

Notwithstanding TD Bank's failure to file an objection to confirmation of the Plan, confirmation will be denied. The amounts listed on the Amended Proof of Claim "control over" the contrary amounts listed for current installment payments to TD Bank under the terms of the form plan. As such, the debtor has, as predicted, a "post-petition arrearage problem."

If he wishes to address that problem in this chapter 13 case, the debtor will have 21 days to file a modified plan that proposes to (a) maintain current installment payments due to TD Bank; (b) cure the pre-petition arrears owed to TD Bank; and (c) cure the post-petition arrears owed to TD Bank. In order to maintain payments on TD Bank's claim under 11 U.S.C. § 1322, the debtor must pay the current monthly payments, as set forth on the Amended Proof of Claim. However, as ordered at the inception of this case, these payments must be made to the trustee, so that he can monitor and distribute them to TD Bank. Pending further proceedings on confirmation, the debtor must pay to the trustee the current monthly payments due to TD Bank

13

and must do so on or before the tenth day of each month, beginning with July 2025.  <u>See</u> 11 U.S.C. § 1326(a)(3).

    Separate orders will issue.

Date: June 20, 2025

                                      Michael A. Fagone
                                      United States Bankruptcy Judge
                                      District of Maine